IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RANDOLPH S. FROST II, o/b/o,            )
RANDOLPH S. FROST                       )
                                        )
            Plaintiff,                  )
                                        )   CIVIL ACTION
v.                                      )
                                        )   No. 07-4056-JAR-JTR
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____ )


REPORT AND RECOMMENDATION

        Plaintiff seeks review of a partially favorable decision of

the Commissioner of Social Security (hereinafter Commissioner)

pursuant to sections 216(I), 223, 1602 and 1614(a)(3)(A) of the

Social Security Act, finding the claimant disabled beginning Feb.

14, 2006, but denying disability insurance benefits and

supplemental security income at any time prior thereto.  42

U.S.C. §§ 416(I), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the

Act).  Finding error, the court recommends reversal and remand

for further proceedings in accordance with the fourth sentence of

42 U.S.C. § 405(g).

I.   Background

        Claimant first applied for disability insurance benefits

(DIB) and supplemental security income (SSI) in Nov. and Dec.

1996 alleging disability beginning Oct. 4, 1995 due to back
problems.  (R. 805).  After proceedings which resulted in an
Appeals Council remand and a new hearing, Administrative Law
Judge (ALJ) Susan B. Blaney issued a decision on Jun. 13, 2000
finding claimant not disabled at any time prior to the decision,
and denying the claims.  Id.; see also, (R. 31-51).  Eventually,
claimant sought and received judicial review of ALJ Blaney's Jun.
2000 decision.  Frost v. Barnhart, No. 02-4106-JAR, 2004 WL
2058264 (D. Kan. Sept. 9, 2004).[1]

The district court reversed the Commissioner's decision and
remanded the case for further proceedings.  (R. 869).  Judgment
was entered in that case pursuant to the fourth sentence of 42
U.S.C. § 405(g) on Sept. 10, 2004.  (R. 870).  Of particular
relevance here, the district court found that the ALJ failed to
address the opinions of treating source physicians, Dr. Vernon,
Dr. Hoffman, and Dr. Johnson.  (R. 860-61).  The court found that
Dr. Ebelke, Dr. Clymer, and Dr. Amundson were examining[2] source
physicians, not treating sources (R. 861-62), and specifically

---

[1]Future citation here will be to the district court's
opinion as it appears in the administrative record.  (R. 853-69).

[2]As used in the decision at issue, in the court's opinions,
and in plaintiff's and the Commissioner's briefs, "examining
source" is equivalent to a "nontreating source" as defined in the
regulations:  "a physician, psychologist, or other acceptable
medical source who has examined you but does not have, or did not
have, an ongoing treatment relationship with you."  20 C.F.R.
§§ 404.1520, 416.902.

found that their "opinions should not be used to make any determination of [claimant's] disability after November 1997." (R. 862).  The court noted that treating source opinions are to be evaluated based upon the procedures and criteria expressed in Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). (R. 860-61 & nn. 25-28).  It noted that examining source opinions are to be evaluated based upon the same regulatory factors as treating source opinions.  (R. 862)(citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  It remanded the case for further proceedings.  (R. 869).

While ALJ Blaney's decision was pending review, the claimant again filed claims for DIB and SSI, and in due course received an unfavorable ALJ decision on Nov. 8, 2002.  (R. 805-06).  Claimant again sought Appeals Council review.  (R. 806).

In an order dated Jan. 11, 2005, the Appeals Council granted the claimant's request for review of the decision on the second set of claims, consolidated both sets of claims, vacated the prior hearing decisions, and remanded the "case for further proceedings on the consolidated claims."  (R. 850).  After remand ALJ Blaney held three hearings in the case.  (R. 806).  At the first hearing, the ALJ and plaintiff's counsel discussed issues regarding the court's remand order, the extensive record, and which physicians had rendered medical opinions in the case and the status of those physicians.  (R. 1598-1676).  Claimant died

before the next scheduled hearing, and the cause of death was determined to be coronary atherosclerosis contributed to by hypertension.  (R. 1554).  Claimant's son was eventually named as a substitute party, plaintiff's mother testified at the continuation of the second hearing, and a vocational expert testified at the third hearing.  (R. 806, 1681-1734).  On Mar. 9, 2007, ALJ Blaney issued a decision on remand in which she found at step three that claimant met Listing 4.04C1 (coronary artery disease) for the six months before his death, but not at any earlier time.  (R. 805-21).  She continued with the sequential evaluation process with regard to claimant's remaining claims, but found claimant not disabled within the meaning of the Act at any time before he became disabled by coronary artery disease, but she did not find any earlier period of disability.

The Appeals Council did not assume jurisdiction of the decision on remand, and therefore that decision is the final decision of the Commissioner.  Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004); 20 C.F.R. §§ 404.984, 416.1484. Plaintiff, claimant's son, now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable

to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.   Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.   "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).   Id. at 750-51.   If claimant's impairments do no meet or equal the severity of a listing, the Commissioner assesses his RFC.   20 C.F.R. §§ 404.1520, 416.920.   This assessment is used at both step four and step five of the process.   Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.   Williams, 844 F.2d at 751.   In steps one through four the burden is on claimant to prove a disability that

-6-

prevents performance of past relevant work.  <u>Dikeman v. Halter</u>,
245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within claimant's capacity.
<u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

        In a 123-page brief, plaintiff made numerous allegations of
error.  He claimed the ALJ erred in weighing the opinions of ten
physicians who were treating sources or examining sources, and of
one who was a chiropractor, an "other" medical source.  (Pl. Br.
76-96).  He claimed the ALJ erred in her credibility
determination; in implying at step two that the ALJ's
characterization of the "severe" impairments was agreed to by
plaintiff; in determining the onset date of plaintiff's disabling
coronary artery disease; and, as a result of the above-named
errors, in relying upon the incomplete hypothetical presented to
the vocational expert.  (Pl. Br. 97-120).  Finally, plaintiff
argued that the decision must be reversed and remanded for an
immediate award of benefits because additional fact-finding
cannot be had due to claimant's death, and because the
Commissioner has long delayed the proceedings and has patently
failed to satisfy his burden of proof at step five of the
sequential process.  (Pl. Br. 120-22).

        The Commissioner argued that plaintiff has failed to show
additional "severe" impairments, and any further error at step

two is harmless; that the ALJ properly evaluated the medical opinions and substantial evidence supports her findings; that the ALJ properly evaluated claimant's credibility and substantial evidence supports that finding; that the evidence shows no disabling limitations resulting from claimant's heart condition before his death and the ALJ's determination to give claimant the benefit of the doubt and assign an onset date six months before death is not error; and that the ALJ was justified in relying upon the hypothetical presented to the vocational expert. (Comm'r Br. 5-11).

The court finds numerous errors as alleged by plaintiff, and further finds that the record evidence is equivocal and remand is necessary for proper weighing of the medical source opinions, for consideration of whether claimant was disabled at any time before expiration of his insured status, for medical expert testimony regarding onset date, and for consideration of whether early limitations resulting from claimant's apparently progressive coronary atherosclerosis and related conditions including hypertension might have combined with limitations from his other impairments to be of disabling severity at any time before the coronary artery disease alone became disabling.  The court will address the issues raised in the order they would be reached in applying the sequential evaluation process, but finds it necessary to first address general issues present here.

## III. General Issues

### A.   Excessively Lengthy Briefing

As noted above, plaintiff's initial brief consists of 123 pages.  (Pl. Br.).  Seventy-four pages comprise plaintiff's summary of the facts applicable in this case.  (Pl. Br. 1-74). Forty-nine pages are plaintiff's "Argument and Authorities," and a final paragraph is plaintiff's "Conclusion" that it is proper to remand for an immediate award of benefits.  (Pl. Br. 74-123).

Judicial review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The district court has promulgated a local rule establishing the procedures whereby such a review is undertaken.  D. Kan. Rule 83.7.1 Subsection (d) of that rule provides that a plaintiff shall file an initial brief "conforming to the requirements of D. Kan. Rule 7.6."  D. Kan. Rule 83.7.1(d).  Subsection (e) of rule 83.7.1 provides that proceedings in judicial review shall be governed by the other local rules to the extent they are applicable, and that the provisions of D. Kan. Rule 83.7.1 shall control over any conflicting rule.  D. Kan. Rule 83.7.1(e).  Local rule 7.1 provides that "The arguments and authorities section of briefs and memoranda submitted shall not exceed 30 pages absent an order of the court."  D. Kan. Rule 7.1(e).

Nothing in rule 83.7.1 conflicts with the requirement in rule 7.1 that the argument and authorities section of a Social

Security Brief be limited to 30 pages.  In fact, Rule 83.7.1 directs one to consider the requirements of Rule 7.6, suggesting that a party should consider the other rules relating to pleadings and motions.  Therefore, the court expects parties and their counsel to adhere to the page limit requirements of Rule 7.1.  Here plaintiff did not do so.  The arguments and authorities section of plaintiff's brief is 49 pages in length.  The court is aware that the record in this case is over 1700 pages in length, and the ALJ's errors are numerous.  Therefore, the court has considered all of plaintiff's arguments, but reminds counsel that it need not have done so, and in the future will not feel obliged to do so.  Counsel is admonished to follow the requirements of the local rules.

     Further, the court would suggest that seventy-four pages of summarization of the evidence are not necessary even in a case such as this.  It is the court's duty to scrutinize the entire record in determining whether the Commissioner's decision is supported by substantial evidence in the record.  <u>Olenhouse v. Commodity Credit Corp.</u>, 42 F.3d 1560, 1564 (10th Cir. 1994); <u>Weir v. Sullivan</u>, No. 91-2265, 1992 WL 193606, *2 (10th Cir. Aug. 10, 1992); <u>Hamilton v. Sec'y of Health & Human Servs.</u>, 961 F.2d 1495, 1504 (10th Cir. 1992)(Kane, J., concurring).  This duty is not lessened by reading the parties' summarization of the evidence. Therefore, although plaintiff should point to record evidence

which supports his arguments, the court must nonetheless ascertain whether the record viewed as a whole supports the ALJ's decision.  The court has scrutinized the entire record in this case.  The court suggests that plaintiff would save time and effort, and better aid the court, by making only a concise summary of the evidence, and providing pinpoint citation to the specific evidence supporting his arguments within the arguments and authorities section of his brief.

**B.   <u>Issue Preclusion</u>**

A prior decision regarding the applications at issue here was reviewed by the United States District Court for the District of Kansas.  Therefore, the record here contains an earlier opinion of the court explaining errors in the Commissioner's <u>earlier</u> decision.  In so far as the court's prior opinion and the court's directions therein are not dicta and relate to issues present in this case, or concern application of the correct legal standard, they will be considered by this court and may be evidence tending to indicate error on the part of the ALJ in the decision on remand.

However, the court will not apply "law of the case" doctrine here, but will apply the doctrine of issue preclusion (collateral estoppel).  <u>Welch v. Barnhart</u>, Civ. A. No. 00-4203-JAR, slip op. at 10-14, 2003 WL 25589020 at *9-14 (D. Kan. Mar. 27, 2003) Report & Recommendation <u>adopted by the Dist. Ct.</u> 2003 WL 22245137

-11-

(D. Kan. Sept. 30, 2003)(each review of a final Social Security decision is a separate case and "law of the case" doctrine is inapplicable).  This is so because a sentence four remand in a Social Security case is a final judgment which terminates the case and makes judicial review of a decision after remand a separate piece of litigation.  Shalala v. Schaefer, 509 U.S. 292, 299 (1993).  Moreover, "the sentence-four, sentence-six distinction is crucial to the structure of judicial review established under § 405(g)."  Id., 509 U.S. at 300-01.  Therefore, "[a]s is perhaps so obvious as to be difficult to perceive, [a sentence four] order of remand issued in [an] earlier action [is] a final judgment; [the subsequent] action is not 'the same litigation' subject to the doctrine of the law of the case."  Hollins v. Apfel, 160 F. Supp. 2d 834, 840 (S. D. Ohio 2001).

Issue preclusion is a principle whereby courts enforce finality of judgment and preclude re-litigation of issues previously decided.  Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398-399 (1981); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979).  Pursuant to the doctrine of issue preclusion, "'[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"  United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002)

(quoting <u>Ashe v. Swenson</u>, 397 U.S. 436, 443 (1970)). "For the purpose of issue preclusion (collateral estoppel) . . . relitigation of an issue presented and decided in a prior case is not foreclosed if the decision of the issue was not necessary to the judgment . . ." <u>Segal v. Am. Tel. & Tel. Co.</u>, 606 F.2d 842, 845 & n. 2 (9th Cir. 1979). Because the doctrine of issue preclusion applies here, neither the Commissioner in the final decision at issue, this court, nor the Commissioner in future proceedings may assert a finding contrary to those findings <u>necessarily decided</u> by the prior court's decision, unless there is an intervening change in legal conditions. <u>Spradling v. City of Tulsa</u>, 198 F.3d 1219, 1223 (10th Cir. 2000).

**IV.  Step Two Findings**

Plaintiff claims that the ALJ's step two findings are erroneous. (Pl. Br. 114). He clarifies his argument however, by explaining that he takes no issue with the findings themselves, but objects to the ALJ's characterizations regarding plaintiff's back impairment and hypertension. (Pl. Br. 114-15). The Commissioner argues that regardless of the ALJ's characterizations, plaintiff does not allege error in the step two findings regarding "severe" impairments, and any error in the ALJ's wording of the findings is harmless. (Comm'r Br. 5). Plaintiff admits the alleged error is not sufficient to justify remand, but argues that "it is illustrative of the entire ALJ's

-13-

decision" (Reply 15), reflecting the ALJ's manner of viewing the evidence "how she wanted to see it, not how the evidence really is." (Reply 14). The court finds that plaintiff is not alleging a step two error, and notes that it would be most helpful to the court and opposing parties if plaintiff would make arguments which illustrate or explain particular errors only where he is presenting argument regarding the errors illustrated or explained. This unnecessary argument took more than one page of the arguments and authorities section of plaintiff's brief, and unnecessarily required the Commissioner to respond, plaintiff to reply, and the court to decide.

## V.    Step Three - Onset of Disability

Plaintiff agrees with the ALJ's determination that claimant's condition met or equaled listing level severity for coronary artery disease before his death, but claims it is error for the ALJ to conclude the disability existed only six months before claimant's death. He argues that the ALJ did not call upon a medical expert to assist in determining onset date, the onset date is ambiguous, and the record contains no specific medical evidence or opinion regarding onset. (Pl. Br. 116). Plaintiff points to evidence regarding hypertension, increased risk of stroke or heart attack, and "hypertensive emergencies" not recognized by the ALJ, and argues that claimant was disabled by a combination of impairments on Oct. 4, 1995, or that remand

is necessary to determine onset.  (Pl. Br. 117).  The

Commissioner argues that there is no evidence of disabling

limitations resulting from coronary artery disease before

claimant's death, and therefore it is not error for the ALJ to

give plaintiff the benefit of the doubt and assign an onset date

six months before the date of death.  (Comm'r Br. 11).  The court

finds that remand is necessary for the Commissioner to secure

medical assistance to interpret the evidence and determine an

onset date of disability resulting from coronary artery disease

in combination with claimant's other impairments.

The Commissioner has promulgated Social Security Ruling 83-

20, "To state the policy and describe the relevant evidence to be

considered when establishing the onset date of disability under

the provisions of titles II and XVI of the Social Security Act

(the Act) and implementing regulations."  1983 WL 31249, *1.  The

Ruling explains that three factors are of particular relevance in

determining onset date:  the individual's allegations, work

history, and the medical evidence.  Id. at *1.  The ruling

recognizes that where a claimant is disabled by slowly

progressing impairments, it may be impossible to obtain medical

evidence of a precise onset date.  The ruling provides:

> In such cases, it will be necessary to infer the onset
> date from the medical and other evidence that describe
> the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive
> impairments, it is not necessary for an impairment to

-15-

> have reached listing severity (i.e., be decided on
> medical grounds alone) before onset can be established.
> In such cases, consideration of vocational factors can
> contribute to the determination of when the disability
> began.

1983 WL 31249, *2.  The ruling explains the procedure for making

an inference regarding onset date:

> How long the disease may be determined to have existed
> at a disabling level of severity depends on an informed
> judgment of the facts in the particular case.  This
> judgment, however, must have a legitimate medical
> basis.  <u>At the hearing, the administrative law judge
> (ALJ) should call on the services of a medical advisor
> when onset must be inferred</u>.
>
> * * *
>
> The available medical evidence should be considered in
> view of the nature of the impairment (i.e., what
> medical presumptions can reasonably be made about the
> course of the condition).  The onset date should be set
> on the date when it is most reasonable to conclude from
> the evidence that the impairment was sufficiently
> severe to prevent the individual from engaging in SGA
> (or gainful activity) for a continuous period of at
> least 12 months or result in death.  Convincing
> rationale must be given for the date selected.

<u>Id.</u> at *3(emphasis added).

Here, the ALJ determined that claimant died from coronary

artery disease that was of listing level severity.  (R. 808).

She found no evidence indicating earlier limitations resulting

from plaintiff's heart condition, and found plaintiff had high

blood pressure but without any previous hypertensive emergency

until he reported to the emergency room on Jul. 25 & 26, 2006.

(R. 808-09).  Therefore, the ALJ gave plaintiff "considerable

benefit of the doubt," and found it was "reasonable to relate

claimant's cardiac impairment back to six months prior to his death, as it is highly unlikely that coronary artery disease of such significance developed overnight." (R. 808).

The ALJ's analysis reveals that the impairment of which claimant died is a slowly progressive impairment and that the ALJ had to make an inference regarding onset date. However, she did not seek assistance from a medical advisor to infer the onset date and she did not provide a convincing rationale for the date selected. Giving claimant the benefit of the doubt says nothing about when disability began, and while, as the ALJ stated, it is unlikely such a fatal condition developed overnight, the ALJ did not attempt to evaluate the medical evidence to determine at what point claimant's condition became disabling in light of claimant's hypertension, high triglyceride levels, other impairments, and evidence of increased risk of stroke or heart attack. While an ALJ must evaluate the medical evidence to reach her conclusions, the onset date determined must have a legitimate medical basis, and it is error for the ALJ to try to determine an onset date based upon her personal medical judgment. Remand is necessary for the Commissioner to call upon the services of a medical adviser to assist in making the appropriate inferences.

**VI.  Evaluation of Opinions of Physicians or "Other" Medical Sources**

The bulk of plaintiff's claims of error address the ALJ's weighing of the opinions of physicians or "other" medical

-17-

sources.  He argues that the ALJ erred in determining whether
certain physicians were treating physicians or examining
physicians; erred by completely rejecting the opinion of a
treating chiropractor merely because a chiropractor is not an
"acceptable medical source;" and erred in determining what
relative weight to assign to the medical opinions and the opinion
of the "other" medical source--the chiropractor.  (Pl. Br. 76-
96).  As relevant to this opinion, plaintiff argues that the ALJ
used the incorrect legal standard in determining whether a
physician is a treating source (Pl. Br. 94-95); that Drs.
O'Boynick, Eberling, Ebelke, Clymer, Amundson, and Carabetta
should all have been determined to be examining rather than
treating sources for the same reasons Drs. Ebelke, Clymer, and
Amundson were found not to be treating sources in the court's
remand order, id.; and that the ALJ completely failed to evaluate
the opinion of a treating physician, Dr. Palaganas.  (Pl. Br.
96).  Plaintiff reviewed the evidence and explained how, in his
view, the evidence requires controlling weight to be accorded to
the opinion of claimant's treating physician, Dr. Vernon, or
alternatively, how the evidence requires according substantial
weight to Dr. Vernon's opinion.  The Commissioner argues that the
ALJ properly evaluated the opinions at issue, and that
substantial evidence supports the ALJ's evaluation.  (Comm'r Br.
5-8).

In its remand order, the district court found that ALJ
Blaney had never addressed the opinions of treating physicians,
Dr. Vernon, Dr. Hoffman, and Dr. Johnson.  (R. 860).  The court
found that ALJ Blaney improperly relied upon the opinions of Dr.
Clymer, Dr. Amundson, and Dr. Ebelke, "all of whom examined and
evaluated, but did not treat" the claimant.  (R. 861).  The court
noted that ALJ Blaney "erroneously referred to Dr. Ebelke as a
treating physician," and "presumably erroneously gave Dr.
Ebelke's opinion the weight accorded that of a treating
physician."  Id.  The court explained that it is proper to give
some weight to the opinions of examining physicians, explained
the standard for weighing both treating physician and examining
physician opinions, and explained that medical opinions must be
weighed relative to each other with the greatest weight usually
given to treating physicians' opinions.  (R. 862).  The court
concluded that the opinions of Drs. Ebelke, Clymer, and Amundson
"should not be used to make any determination of [claimant's]
disability after November 1997," because those opinions were
formulated before the claimant was diagnosed with a herniated
disc in Nov. 1997.  Id.  The court remanded for a proper weighing
of the treating source opinions.  (R. 869).

On remand, ALJ Blaney determined that Drs. Vernon and
Hoffman are treating physicians, but that Dr. Johnson is a
chiropractor and, as such, is not an acceptable medical source

and cannot be a treating physician. (R. 811). The ALJ
considered, but gave "little weight" to Dr. Johnson's opinion
because the doctor is not an acceptable medical source. Id. She
determined that Drs. Varghese, O'Boynick, Eberling, Ebelke, Reed,
Humphrey, Spiridigliozzi, and LaFrance are treating physicians.
(R. 811-13). She determined that Drs. Clymer, Amundson,
Carabetta, and Voth are examining physicians. (R. 812-13).

The court must first consider whether the determinations in
the remand order that Dr. Johnson is a treating source and that
Dr. Ebelke is an examining source are issues which were litigated
and necessarily decided in the remand order and are, therefore,
precluded from being adjudicated by ALJ Blaney or this court. It
is clear that the court treated Dr. Johnson as a treating
physician in its remand order. (R. 860). However, that
determination was not litigated and necessarily decided in the
remand order. The remand order does not reveal that the court
ever considered the possibility that Dr. Johnson might not be a
treating physician. Moreover, the court determined that it could
not determine the weight given to the treating source opinions,
and remanded for the Commissioner to "address these opinions on
remand and give them controlling weight if they are well
supported." (R. 860-61)(emphasis added). The court clearly
contemplated that the opinion of Dr. Johnson would be reevaluated
on remand, and it cannot be said in the circumstances that the

court's opinion <u>necessarily decided</u> that Dr. Johnson is a treating source and that his opinion <u>must</u> be evaluated on remand as a <u>treating source</u> opinion.

The determination with regard to Dr. Ebelke's opinion is a closer question, but in the circumstances it cannot be said that the court's opinion necessarily decided that Dr. Ebelke is an examining source.  As quoted above, in its remand order the court stated that Dr. Ebelke examined and evaluated, but did not treat plaintiff, and stated that the ALJ erroneously referred to Dr. Ebelke as a treating source.  (R. 861).  Nonetheless, those statements are not necessary to the court's opinion, because the court recognized that on remand Dr. Ebelke's opinion must be weighed in accordance with the regulations and must be considered in reaching a final decision as to the claimant's condition before Nov. 1997.  (R. 861-62).

Beyond the mere statement that Dr. Ebelke examined and evaluated, but did not treat the claimant, the court did not consider what specific factors present here are relevant to determining whether Dr. Ebelke was a treating or examining source.  The court did not consider that, in certain circumstances, a physician who has only evaluated plaintiff's condition may be considered a treating source if he "has, or has had an ongoing treatment relationship" with the claimant and "if the nature and frequency of the . . . evaluation is typical for

-21-

[claimant's] condition(s)." 20 C.F.R. §§ 404.1502, 416.902. The court did not consider whether the nature and frequency of the evaluation by Dr. Ebelke is typical for the condition for which the doctor saw Mr. Frost. Again, because the court remanded for reevaluation of the medical opinions, this court finds that the court contemplated that Dr. Ebelke's opinion would be reevaluated and did not necessarily decide that Dr. Ebelke is an examining source. The court did decide, however, that the opinions of Drs. Ebelke, Clymer, and Amundson are not relevant to the question of disability <u>after</u> Nov. 1997 and may not be used in making that determination. (R. 862). Absent a change in legal conditions, neither this court nor any other forum may relitigate this issue, or use these opinions to support a decision that plaintiff was not disabled after Nov. 1997.

This court has found it proper for the ALJ to evaluate whether Dr. Johnson was a treating source. Plaintiff argues that it was improper for the ALJ to reject the chiropractor's opinion merely because he is not an acceptable medical source. The court agrees with plaintiff. The ALJ stated that she had considered Dr. Johnson's opinion, and gave it little weight because Dr. Johnson is not an acceptable medical source. (R. 811). However, she did not explain the weight given the opinion.

Seven months before the ALJ's decision at issue, the Commissioner promulgated a <u>Social Security Ruling</u> (SSR)

-22-

clarifying and explaining how the agency will consider opinions
and other evidence from persons who are not "acceptable medical
sources."  SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings
327-34 (Supp. 2007).  The Ruling provides that such opinions will
be evaluated using the regulatory factors for evaluating medical
opinions; id. at 331-32(citing 20 C.F.R. §§ 404.1527, 416.927);
and explains that the ALJ "generally should explain the weight
given to opinions from these 'other sources,' or otherwise ensure
that the discussion of the evidence in the determination or
decision allows a claimant or subsequent reviewer to follow the
adjudicator's reasoning, when such opinions may have an effect on
the outcome of the case."  Id. at 333.  Here, the ALJ stated that
she gave Dr. Johnson's opinion "little weight," but she did not
support that determination with evidence or explain how the
regulatory factors support the determination.  She did not
indicate any consideration of the regulatory factors for weighing
medical opinions with regard to Dr. Johnson's opinion, and stated
that she gave it "little weight' because Dr. Johnson is not an
acceptable medical source.  That reason, standing alone as it
does here, is an insufficient basis to discount the opinion.
Remand is necessary for the Commissioner to properly weigh Dr.
Johnson's "other" medical source opinion.

    The court also finds that the ALJ applied the incorrect
standard for determining whether a particular physician is an

examining source or a treating source.  The ALJ determined that
Drs. Eberling and Ebelke in particular are treating physicians in
the circumstances of this case because they saw claimant "for the
purpose of treatment."  (R. 812).  Plaintiff argued before the
ALJ and claims before this court that the correct determination
rests upon whether there is an ongoing treatment relationship,
and that a physician who saw a claimant only one or two times can
never be a treating physician.  (Pl. Br. 94-95)(citing <u>Cusack v.</u>
<u>Callahan</u>, 991 F. Supp. 1268, 1272 (D. Kan. 1998)).

As plaintiff argues, a "treating source" is a physician "who
has, or has had, an ongoing treatment relationship with" the
claimant.  20 C.F.R. §§ 404.1502, 416.902.  However, the
regulations note that a "treating source" may be a physician who
has provided "medical treatment <u>or evaluation</u>."  <u>Id.</u>(emphasis
added).  The regulations explain that a physician may be a
"treating source" even if he has evaluated claimant only a few
times "if the nature and frequency of the treatment or evaluation
is typical for [claimant's] condition(s)."  <u>Id.</u>  Thus, plaintiff
is correct in so far as he states that a "treating source" must
have an ongoing treatment relationship with claimant (of some
duration), but the ALJ is also correct in so far as she states
that a physician may be a treating source if he has seen claimant
for the purpose of treatment or evaluation.  However, the
regulations reveal that a necessary distinction in reconciling

the two statements is a determination if the nature and frequency of treatment or evaluation is <u>typical for the condition at issue</u>. In this case, the ALJ did not consider this distinction. Therefore, remand is necessary for the Commissioner to properly determine whether the physicians are treating sources or examining (nontreating) sources.  On remand, this standard must be applied with regard to all physicians about whom there is a question whether the physician is a "treating source."

Plaintiff argues the ALJ erred in failing to address the opinion of Dr. Palaganas, and in determining what relative weight to assign to all the medical opinions and the opinion of the "other" medical source--the chiropractor.  With regard to the opinion of Dr. Palaganas, the court notes that the opinion is contained in a "check-the-block" form, and Dr. Palaganas did not check all of the blocks.  (R. 799).  Nonetheless, because the ALJ did not address the opinion,[3] because the court may not create post-hoc rationalizations for the Commissioner's decision, and because the case must be remanded for other errors, the court finds remand is necessary for the Commissioner to properly consider Dr. Palaganas's decision.

---

[3]The court notes that the ALJ mentioned the claimant was seen by Dr. Palaganas at the VA on Oct. 1, 1999, and she summarized some of the evidence regarding that visit (R. 815), but she did not address Dr. Palaganas opinion despite the fact that counsel specifically highlighted the opinion at the hearing on July 13, 2006.  (R. 1633-35).

The ALJ provided considerable summarization of the medical evidence and the medical source and "other" medical source opinions regarding claimant's condition.  (R. 809-18).  Moreover, the ALJ incorporated by reference the summary of the medical evidence and medical opinions included in her first decision.  (R. 811, 814); see also (R. 34-40).  However, as is too often the case with decisions of the Commissioner, the ALJ did not provide any relative weighing of the medical opinions.  Here, the ALJ stated that Dr. Johnson's opinion was given little weight because Dr. Johnson is not an acceptable medical source (R. 811), and she stated four general reasons that Dr. Vernon's opinion could not be given controlling weight.[4]  (R. 816).  However, she did not state what less-than-controlling weight Dr. Vernon's opinion was given, and did not state what weight the other medical opinions were given.  She summarized the evidence and stated that she had considered all of the evidence and opinions in arriving at her RFC assessment, but did not relate any portion of her RFC

_____

[4]The first reason was that Dr. Vernon's opinion "conflicts with the statements of numerous other doctors, including those who are specialists in the fields of orthopedics and neurology and who are therefore specialists in the treatment of back conditions."  (R. 816).  This may be error and must be addressed on remand.  The ALJ does not specify who the "numerous other doctors" are, but it would appear that she may be relying at least in part upon the opinions of Drs. Ebelke, Clymer, and Amundson.  However, in its earlier remand order, the district court found those opinions are not relevant to determination of disability after Nov. 1997.  Therefore, they cannot be seen as inconsistent with Dr. Vernon's evaluation of claimant's capacities after Nov. 1997.

-26-

assessment to any specific evidence in the record.  All of the
analysis was made in the ALJ's mind, making her decision
unreviewable by the court.  The ALJ "did not connect the dots, so
to speak," between the opinions and evidence she summarized and
the conclusion she reached.  Kency v. Barnhart, No. 03-1190-MLB,
slip op. at 7, (D. Kan. Nov. 16, 2004); see also Wolfe v.
Barnhart, No. 05-1028-JTM, 2006 WL 2264006 at *2 (July 24,
2006)("It is insufficient for the ALJ to generally discuss the
evidence but fail to relate the evidence to his conclusions").
On remand, the Commissioner must engage in relative weighing of
the medical opinions and of the "other" medical source opinions.
He must explain the weight given the opinions and explain how the
evidence leads to and supports the determination made.

     Plaintiff's argument that Dr. Vernon's opinion must be given
controlling weight defies reason and reflects a misunderstanding
of Tenth Circuit law and of the regulations.  Therefore, although
remand is necessary to properly weigh the medical opinions, the
court feels it necessary to address the law applicable to
assigning controlling weight to a treating source opinion.  As
plaintiff argues, the Tenth Circuit has explained the nature of
the inquiry regarding a treating source's medical opinion.
Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  As
the Watkins court recognized, the regulations provide that a
treating source opinion may be worthy of "controlling weight."

<u>Watkins</u>, 350 F.3d at 1300(citing 20 C.F.R. § 404.1527(d)(2)).  In deciding whether an opinion is worthy of "controlling weight," the ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u> at 1300 (quoting SSR 96-2p, and citing 20 C.F.R. § 404.1527(d)(2)).  If the opinion is well-supported, the ALJ must then determine whether the opinion is <u>consistent with other substantial evidence</u> in the record.  <u>Id.</u> (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id.</u>

SSR 96-2p, cited by the court in <u>Watkins</u>, explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in <u>Richardson v. Perales</u>, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2007).  As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  <u>Id.</u>  In this case, at the very least Dr. Vernon's medical opinion is inconsistent with the RFC assessments prepared by the state agency physicians.  (R. 473-81, 1198-1207).  These RFC assessments are evidence which a reasonable mind might accept as

-28-

adequate to support a conclusion contrary to Dr. Vernon's opinion.  The court does not mean to imply that the RFC assessments alone constitute substantial weight sufficient to reject Dr. Vernon's opinion completely or to outweigh that opinion.  Nonetheless, the RFC assessments are other substantial evidence in the record inconsistent with Dr. Vernon's opinion.  Therefore, it was appropriate for the ALJ to determine that Dr. Vernon's opinion may not be given "controlling weight."

The Commissioner must determine on remand of what less-than-controlling weight Dr. Vernon's treating source opinion is worthy.  Because Dr. Vernon's opinion is inconsistent with other medical evidence, the ALJ's task will be "to examine the other physicians' reports 'to see if [they] 'outweigh[]' the treating physician's report, not the other way around.'"  Goatcher, 52 F.3d at 289-90(quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)).  If the Commissioner determines that "examining source," "nontreating source," or "nonexamining source" opinions outweigh the "treating source" opinions, he must "give 'specific, legitimate reasons' for doing so."  Watkins, 350 F.3d at 1301(citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Because the court finds remand is necessary, and because proper evaluation of the medical opinions may affect the other determinations at issue, the court will not address the remaining

-29-

errors alleged in weighing the medical opinions or plaintiff's claims of error in determining the credibility of claimant's allegations of disabling symptoms.  Plaintiff may make his arguments on remand.

## VII. Remand for Immediate Award of Benefits

Plaintiff claims that the court should order an immediate award of benefits beginning Oct. 4, 1995 because there is no additional evidence which can be presented, additional fact-finding would serve no useful purpose, and the Commissioner has had ample opportunity over twelve years to correctly decide the issues presented but has "patently failed to satisfy the burden of proof at step five." (Pl. Br. 121)(quoting Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997)).

The decision to remand for an immediate award of benefits rests within the court's discretion.  Taylor, 969 F. Supp. at 673(citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).  The Tenth Circuit has explained the standard to be applied when considering whether to remand for an immediate award of benefits.  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).

> Some of the relevant factors we consider are the length of time the matter has been pending, e.g., Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993), and whether or not "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits."  Harris v. Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir. 1987).

Salazar, 468 F.3d at 626.

The decision to direct an award of benefits should be made, however, only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).  Nevertheless, the Commissioner is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion.  Sisco, 10 F.3d at 746.

The court believes that in these circumstances remand for further proceedings is the appropriate course.  Here, the evidence is equivocal.  There is evidence from which one might determine claimant was disabled on his alleged onset date or at some other date before he died from coronary artery disease. But, there is evidence from which one might determine that claimant was able to perform substantial gainful activity until some time shortly before his death.  Claimant consistently claimed he was disabled because of back impairments, but he eventually died because of coronary artery disease complicated by hypertension.  Onset date is central to a determination of disability in the circumstances, but no medical advisor has spoken as to what is a reasonable onset date based upon the evidence of record.  Moreover, even if claimant was not disabled

because of his impairments in 1995, it is possible, if not likely, that at some point before his death (perhaps before his disability insured status expired) claimant's impairments combined to become of disabling severity.   No medical expert testimony has been considered regarding this possibility. Neither this court nor an ALJ is qualified to make the medical judgments or inferences necessary to such a determination.

While this case has been under adjudication for a extensive time, this is only the second time it has been before the court. Moreover, as discussed herein, although the ALJ applied the incorrect legal standard to evaluate the medical opinions in her decision on remand, plaintiff's counsel did not present argument to the ALJ containing the correct standard.   Finally, because claimant died in 2006, the delay caused by remand for a proper decision will not result in continually-increasing losses to the claimant or to plaintiff.   On balance, the court believes remand is the appropriate remedy in this case so that the medical evidence and medical opinions may be properly considered, and so that a medical advisor may be consulted regarding the implications of the medical evidence in this case and regarding a reasonable onset date based upon that evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision on remand be REVERSED and that judgment be entered pursuant to

the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 9th day of April 2008, at Wichita, Kansas.


                              s/John Thomas Reid
                              **JOHN THOMAS REID**
                              **United States Magistrate Judge**

-33-